IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GREGORY RIORDAN,

      Plaintiff

  v.

CITY OF HERMISTON, OREGON;
DETECTIVE LEONARD STOKOE;
and OFFICER PAUL WOLVERTON,

      Defendants.

Civil No. 08-693-SU
FINDINGS AND RECOMMENDATION

SULLIVAN, Magistrate Judge:

      Gregory Riordan filed a Complaint against the City of Hermiston, Oregon, Hermiston Detective Leonard Stokoe, and Police Officer Paul Wolverton, alleging civil rights violations pursuant to 42 U.S.C. § 1983, and state law claims for negligence, malicious prosecution, and false imprisonment, arising from two separate arrests. In addition, plaintiff seeks attorney fees under 42 U.S.C. § 1988. Defendants filed a motion for summary judgment against all claims. For the reasons stated below, defendants' motion should be granted.

Page 1 - FINDINGS AND RECOMMENDATION

*Background*

The undisputed facts are as follows: On June 8, 2006, plaintiff was arrested for harassment[1] and menacing;[2] and on September 13, 2006, he was arrested again for harassment, menacing and stalking.[3] Plaintiff's illegal conduct was directed at Susan Lish, whom he met through an Internet dating service. After "meeting" online plaintiff wanted to meet Lish personally so he stopped by her home. Lish was working outside at the time and agreed to have a beer and visit with plaintiff. A

---

[1]Or. Rev. Stat. § 166.065 provides, in pertinent, part:

**Harassment.** (1) A person commits the crime of harassment if the person intentionally: . . . (c) Subjects another to alarm by conveying a telephonic, electronic or written threat to inflict serious physical injury on that person or to commit a felony involving the person or property of that person or any member of that person's family, which threat reasonably would be expected to cause alarm.

(2) A person is criminally liable for harassment if the person knowingly permits any telephone or electronic device under the person's control to be used in violation of subsection (1) of this section.

(3) Harassment is a Class B misdemeanor.

[2]Or. Rev. Stat. § 163.190 provides, in pertinent, part:

**Menacing.** (1) A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury.

[3]Or. Rev. Stat. § 163.732 provides, in pertinent, part:

**Stalking.** (1) A person commits the crime of stalking if: (a) the person knowingly alarms or coerces another person... by engaging in repeated and unwanted contact with the other person; (b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact, and (c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim. . . .

(2)(a) Stalking is a Class A misdemeanor.

Page 2 - FINDINGS AND RECOMMENDATION

short time later, Lish received an email to the effect – "I know you want me" – from an email account used by Gregory Riordan (plaintiff). Lish replied "You're wrong, I don't want you."

On May 31, 2006, Lish received two threatening emails. The next day, on June 1, 2006, Lish contacted the Hermiston Police Department dispatch to complain about the contact. According to the probable cause affidavit filed by Wolverton, Lish received two threatening email messages at her residence. After investigation, the emails were found to have been generated from an email account belonging to and controlled by plaintiff. Wolverton contacted plaintiff and scheduled an interview on June 5, 2006, at the Hermiston Police Department. Plaintiff appeared voluntarily, waived his Miranda rights and agreed to an interview.

Wolverton advised plaintiff that he was a suspect in a criminal investigation of the emails sent to Lish. During the interview, plaintiff denied any knowledge Lish. In fact, Wolverton asked plaintiff several times whether he knew Lish and plaintiff repeatedly denied knowing her or sending her threatening emails. Plaintiff did explain that he was having problems with his email accounts; that he had "bad emails;" and that charges were applied to has account that he had not authorized. Additionally, plaintiff told Wolverton that he was at work when the threatening emails were sent to Lish and two other people had access to his home computer.

Plaintiff offered to provide Wolverton email messages from his accounts with *Yahoo* and *Hotmail* at the Hermiston Police Department email address. The email message Wolverton received from plaintiff's *Hotmail* account was the same address as that shown on the threatening email messages sent to Lish. Additionally, plaintiff consented to a photograph taken for a photo line-up display to be presented to Lish. After viewing six photos in a line-up, Lish identified plaintiff as the person she knew.

Page 3 - FINDINGS AND RECOMMENDATION

On June 8, 2006, Wolverton interviewed plaintiff a second time and during that interview plaintiff admitted to knowing and meeting Lish. Plaintiff, however, continued to deny sending the threatening emails to Lish and offered that someone else must be accessing his account. Based upon discrepancies in plaintiff's initial statements, plaintiff's demeanor, Lish's photo line-up identification of plaintiff, and the email address match between the email plaintiff sent to Wolverton and the threatening emails sent to Lish, Wolverton concluded he had probable cause to make an arrest for menacing and harassment in violation of Oregon law. Plaintiff alleges that Wolverton declined his request to investigate the Internet Provider ("IP") addresses from which the threatening emails were sent and instead arrested him. Following plaintiff's arrest, Lish did not receive any threatening emails until September 2, 2006.

From September 2, 2006, to September 13, 2006, Lish received a series of emails threatening to have sex with her and threatening her life. The emails were reported to Wolverton who referred the case to Stokoe. There were a total of eighteen emails with the "from" designation as Gregory Riordan. While a number of different email addresses were utilized, all but one of the emails were signed by "Greg" and the single exception was signed by "Greg Riordan." Stokoe determined that plaintiff was not at work when the emails were sent to Lish.

On September 13, 2006, Lish filed an Oregon Uniform Stalking Complaint against plaintiff in Umatilla County Circuit Court, with the harassing and threatening email contact as support for the petition. A citation was issued against plaintiff and Stokoe arrested him at work on the same day. Plaintiff was charged with stalking, menacing and multiple counts of harassment in violation of Oregon law.

The investigation against plaintiff continued and, two days later, on September 15, 2006, Stokoe obtained and executed a search warrant at plaintiff's residence. Stokoe seized two computers and some notes containing the email addresses that had been used to send emails to Lish. On September 17, 2006, Lish received forty threatening email from "Greg" that had been sent from an email address found at plaintiff's residence. Lish again received threatening emails on September 21st and 23rd. The emails were signed "Greg" and were from the email address found at plaintiff's residence. On October 5, 2006, a person identifying himself as Greg Riordan called Lish's place of employment and left a message that he would get in touch with her that night.

On October 19, 2006, the Umatilla County District Attorney issued a subpoena for all email accounts used by plaintiff in the emails sent to Lish. Yahoo sent a 13-page report to the District Attorney listing various email addresses and accounts opened by a person claiming to be Greg Riordan. Some of the physical addresses listed on the accounts included plaintiff's and others did not. A check of the IP addresses showed that all of the emails received by Lish came from a location near Walla Walla, Washington, and many from Whitman College (located in Walla Walla). The case was referred to the Federal Bureau of Investigation for analysis of plaintiff's computers.

On May 8, 2007, the Umatilla County District Attorney dismissed all charges against plaintiff. On March 6, 2007, plaintiff sent a Notice of Tort Claim pursuant to Or. Rev. Stat. § 30.075 to the Hermiston City Attorney claiming malicious prosecution as a result his arrests on June 8, 2006 and September 13, 2006.

*Legal Standard*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial

Page 5 - FINDINGS AND RECOMMENDATION

burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir. 1999).

*Analysis*

I.      42 U.S.C. § 1983

      A.      Individual Defendants – Wolverton and Stokoe

To establish a prima facie case under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). There is no dispute that the officers were acting under the color of state law. Moreover, plaintiff's First Claim for Relief alleges a section 1983 claim grounded in a violation of his Fourth Amendment rights by the individual defendants when they arrested him on June 8, 2006, and September 13, 2006, respectively, without probable cause.[4] An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983. *McKenzie v. Lamb,* 738 F.2d 1005, 1007 (9th Cir. 1984). Thus, the sole question for the court is whether Wolverton and Stokoe had probable cause for plaintiff's arrests on June 8 and September 13, 2006.

---

[4]In his Complaint, plaintiff also alleges a violation of procedural and substantive due process. Defendants are correct, however, that plaintiff's claims are properly brought under the particular constitutional provision in the Fourth Amendment and not the more generalized notion of "substantive due process." *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (When a particular Amendment "provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing the[] claims.").

Page 6 - FINDINGS AND RECOMMENDATION

Probable cause to arrest exists when "officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). Under the collective knowledge doctrine, in determining whether probable cause exists for arrest, courts look to "the collective knowledge of all the officers involved in the criminal investigation." *United States v. Ramirez,* 473 F.3d 1026, 1032 (9th Cir. 2007) (citation and quotation marks omitted); *see also Rohde v. City of Roseburg*, 137 F.3d 1142, 1143 (9th Cir. 1998) (An officer may reasonably rely on information from other officers and records in determining whether a suspect is engaged in criminal activity, even where such information is later discovered to have been erroneous.) Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury. *McKenzie,* 738 F.2d at 1008.

Plaintiff contends that Wolverton and, subsequently, Stokoe ignored evidence of an exculpatory nature and failed to investigate statements made by plaintiff that would have negated probable cause.[5] Plaintiff argues that he told the officers about problems he was having with his emails; that someone else must have been using his email accounts; that two other individuals could have had access to his computer; and that the officers could have obtained the IP addresses from

---

[5]The court notes that plaintiff submitted an Incident Report from 2007 regarding possible access by Kathy Hendrickson to his online *Myqwest* account and his phone number; and, information to show that Ms. Hendrickson's daughter, Kirsten, "has a computer that is being used to stalk and steal the identity of Greg Riordan." (Bart A. Brush Decl. Ex. 1, Feb. 6, 2009). This after-acquired evidence, while potentially exculpatory, is not germane to the court's analysis of whether in June and September of 2006, probable cause existed to arrest plaintiff. It is well-established that the court must evaluate the reasonableness of the officers' actions based upon information known to the officers from trustworthy sources at the time of the arrests. *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004).

Page 7 - FINDINGS AND RECOMMENDATION

which the emails were sent. Plaintiff insists there is an issue of material fact regarding the reasonableness of the officers' investigation prior to plaintiff's arrests.

Turning first to plaintiff's arrest by Wolverton on June 8, 2006, the facts known to Wolverton at the time of the arrest were more than sufficient to convince a prudent person that there was a fair probability that plaintiff sent the harassing emails to Lish. It is undisputed that plaintiff knew Lish, yet repeatedly lied to Wolverton about knowing her. Lish identified plaintiff as the man she met through the Internet dating service. Wolverton determined that plaintiff had multiple email accounts and regularly used the Internet. Further, based on his training and experience, Wolverton believed that plaintiff was sophisticated with computers and knew how to protect access to his passwords and accounts. *See Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006) ("[I]t is settled law that officers may 'draw on their own inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" (quoting *United States v. Hernandez,* 313 F.3d 1206, 1210 (9th Cir. 2002)). The email address plaintiff sent Wolverton from his *Hotmail* account matched the email address that appeared on the threatening messages to Lish; the same account plaintiff told Wolverton was closed.

Plaintiff's suggestion to Wolverton that someone else may have access to plaintiff's email accounts was insufficient to negate this ample showing of probable cause. *See Broam v. Bogan,* 320 F.3d 1023, 1032 (9th Cir. 2003) (once the officers had probable cause they were "not required by the Constitution to investigate independently every claim of innocence" (internal quotation omitted)); *see also Briggs v. Holsapple*, No. CV 08-6037-KI, 2009 WL 395134, at *4 (D. Or. Feb. 11, 2009) ("where the information supports a finding of probable cause an officer will not be liable for an arrest simply because probable cause may have dissipated had the officer conducted further

Page 8 - FINDINGS AND RECOMMENDATION

investigation" (citation omitted)).  Although Wolverton was not permitted to wilfully disregard plainly exculpatory evidence, *see Broam,* 320 F.3d at 1032, plaintiff fails to allege something known to Wolverton at the time of the arrest that would have negated probable cause.

Turning next to plaintiff's arrest by Stokoe on September 13, 2006, once again the facts known to Stokoe at the time of the arrest were more than sufficient to convince a prudent person that there was a fair probability that plaintiff sent the harassing emails to Lish.  In September 2006, Lish was again receiving threatening emails.  Based upon prior information supplied by Wolverton, Stokoe began an investigation of the additional harassing emails.  Stokoe also relied upon Wolverton's impressions of plaintiff from the two interviews, including plaintiff's previous lies about knowing Lish.  *See Ramirez*, 473 F.3d at 1032 (courts look to "the collective knowledge of all the officers involved in the criminal investigation").  All of the offending emails listed Gregory Riordan as the sender and corresponded with information plaintiff had provided Wolverton; namely, that in his email headings the name "Gregory Riordan" would appear in the heading portion.  The emails threatened Lish that he was going to have sex with her and she was going to be killed.  Lish filed a complaint against plaintiff for stalking.  Details referenced in the September emails contained information that reasonably would have been known only to plaintiff and Lish, such as the termination of the relationship and prior police contact.  Stokoe's check of plaintiff's work schedule revealed that plaintiff was not at work at the times Lish received the emails, which indicated plaintiff could be continuing to send the emails.  All of the emails were from accounts opened by plaintiff and, as such, the sender would need plaintiff's passwords.  Plaintiff did not offer any explanation for how someone else could access his password protected email accounts.

Based on the undisputed facts, the court concludes as a matter of law that probable cause existed to arrest Riordan on June 8 and September 13, 2006. Further, because probable cause existed at the time of his arrests, there can be no Fourth Amendment violation arising from those arrests. *See Devenpeck v. Alford,* 543 U.S. 146, 153-54 (2004) (where there is probable cause to arrest for any crime, the arrest does not violate the Fourth Amendment, whether or not that crime was actually charged). Accordingly, the court need not reach the issue of qualified immunity for the officers actions and defendants' request for summary judgment against plaintiff's First Claim for Relief – 42 U.S.C. § 1983 – should be granted.

In his Third Claim for Relief, plaintiff alleges a violation of section 1983 for malicious prosecution grounded in the inaccurate and incomplete investigation conducted by Wolverton and Stokoe. As stated above, to plead a section 1983 action, plaintiff must allege facts establishing a deprivation of rights secured by the Constitution or laws of the United States. In the Ninth Circuit, facts alleging the common law tort of malicious prosecution alone are insufficient to state a deprivation of constitutional rights. *Cline v. Brusett*, 661 F.2d 108, 112 (9th Cir. 1981); *Paskaly v. Seale*, 506 F.2d 1209, 1212 (9th Cir. 1974). Rather, to prevail on a section 1983 claim for malicious prosecution, a plaintiff "must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995).

As set forth above, probable cause existed for plaintiff's arrests on June 8 and September 13, 2006. Moreover, plaintiff has neither alleged in his Complaint, nor set forth any evidence, that the officers acted with the purpose of denying him a specific constitutional right. Accordingly, plaintiff is unable as a matter of law to establish a section 1983 grounded in malicious prosecution.

Page 10 - FINDINGS AND RECOMMENDATION

Defendants' request for summary judgment against plaintiff's Third Claim for Relief – 42 U.S.C. § 1983 - Malicious Prosecution – should be granted.

      B.      Municipal Defendant – City of Hermiston.

In his Second Claim for Relief plaintiff alleges a section 1983 claim against the City of Hermiston based upon the failures of the City to train, discipline, and supervise its officers in proper and legal investigative techniques and as a result of the City's policy of approving substandard investigative methods. Based upon the holding of *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), and its progeny, a local government entity may be held liable for its failure to preserve a constitutional right only where a plaintiff can demonstrate: (1) deprivation of a constitutional right, (2) due to the policy of a municipality, (3) which exhibits "deliberate indifference" to the plaintiff's constitutional right, and (4) which is the moving force behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). Once again plaintiff neither alleged in his Complaint, nor set forth any evidence, to show that the City's policies and procedures evince a "deliberate indifference" to the constitutional rights of its citizens. Accordingly, defendants' request for summary judgment against plaintiff's Second Claim for Relief – 42 U.S.C. § 1983 – should be granted .

II.      <u>State Law Claims</u>

As a threshold matter, plaintiff's state law tort claims for malicious prosecution and false imprisonment directed against Wolverton and Stokoe for actions taken with the course and scope of their employment as officers for the Hermiston Police Department as employees of the City of Hermiston cannot be sustained under Oregon law. Pursuant to section 30.265(1), the sole cause of action for the tort of an employee of a public body acting within the scope of their employment is

against the public body only. Or. Rev. Stat. § 30.265(1). Plaintiff contends that under the Oregon Supreme Court's decision in *Clarke v. OHSU*, 343 Or. 581, 175 P.3d 418 (2007), his state tort claims against the individual defendants can survive. It is clear from the opinion in *Clarke* that the Oregon court limited its analysis of Or. Rev. Stat. § 30.265 to the facts of that case. *See, e.g., Atwood v. Oregon Department of Transportation*, No. CV 06-1726-ST, 2008 WL 803020, at *10 (D. Or. March 20, 2008) ("*Clarke* was clear that its decision was confined to an 'as applied' challenge for 'permanent and severe injury caused by medical negligence.' It did not hold the substitution of the state for individually named defendants was unconstitutional absent evidence that the substituted remedy against the state is an emasculated version of the common law remedy."); *Johnson v. Hanada*, No. CV 06-1206, 2009 WL 73867, at *8 (D. Or. January 8, 2009) ("This Court concludes the holding of *Clarke* was limited and specific to the facts at issue in that case.")

In any event, plaintiff's state tort claims for malicious prosecution, false imprisonment and negligent training must fail on the merits. With respect to his state law claims for malicious prosecution and false imprisonment, the court's finding of probable cause for plaintiff's arrests provides a complete defense to both of those claims. *See, e.g., Hartley v. State Water Resources Dept.*, 77 Or. App. 517, 520, 713 P.2d 1060 (1986) ("the existence of probable causes is a complete defense to a claim for malicious prosecution"); *Bacon v. City of Tigard*, 81 Or App. 147, 149-50, 724 P.2d 885 (1986) (imprisonment cannot be "false" if lawful reason, i.e., probable cause, supports arrest). As set forth above, probable cause existed for plaintiff's arrests on June 8 and September 13, 2006. Accordingly, defendants' request for summary judgment against plaintiff's Fourth Claim

for Relief – Malicious Prosecution – and Sixth Claim for Relief – False Imprisonment – should be granted.[6]

Finally, plaintiff's Fifth Claim for Relief alleges the City of Hermiston was negligent in its training and supervision of Wolverton and Stokoe. To sustain a claim for negligent supervision under Oregon law, a plaintiff must establish that the employer had knowledge of an employee's wrongful conduct. *See Whelan v. Albertson's, Inc.,* 129 Or. App. 501, 507, 879 P.2d 888 (1994); *Carr v. U.S. West Direct Co.,* 98 Or. App. 30, 37, 779 P.2d 154 (1989). Plaintiff offers neither argument nor evidence to support his claim for negligent supervision and training in opposition to the declarations of Wolverton and Stokoe. Indeed, the City's evidence reveals that both officers met the State's standards for officer training and the policies and procedures mandated. Additionally, plaintiff has not offered any evidence that of wrongful conduct by the officers of which the City was aware. On the contrary, the court found here that the officers had probable cause to arrest plaintiff. In the absence of specific facts creating a genuine issue for trial, plaintiff has failed his burden to create a factual dispute regarding the City's knowledge of the officers' wrongful conduct presenting a risk of injury to plaintiff. Accordingly, defendants' request for summary judgment against plaintiff's Fifth Claim for Relief – Negligent Supervision – should be granted .

---

[6] Because this court has determined that plaintiff is unable to state a claim for malicious prosecution, false imprisonment or negligent training and supervision, the court need not reach defendants' procedural defenses.

Page 13 - FINDINGS AND RECOMMENDATION

*Conclusion*

Based on the foregoing, defendants' Motion for Summary Judgment (doc. #6) should be **GRANTED**. Plaintiff's Complaint (doc. #1) should be **DISMISSED** with prejudice; and any other pending motion should be **DENIED** as moot.

Dated this 15th day of May 2009.

                                      /s/ Patricia Sullivan  
                                        Patricia Sullivan  
                                  United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **June 4, 2009**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.